***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EVEREST REINSURANCE CO., | : | Civil Action No. 11-5332(FLW) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| INTERNATIONAL AEROSPACE INSURANCE SERVICES, INC., | : | |
| Defendant. | : | |

**WOLFSON, United States District Judge:**

Plaintiff Everest Reinsurance Company ("Everest" or "Plaintiff") moves for partial summary judgment on its claims of breach of fiduciary duty and conversion against Defendant International Aerospace Insurance Services, Inc. ("Inter-Aero" or "Defendant"). The present dispute arises from an insurance relationship wherein Inter-Aero, an agent of Everest, underwrote insurance policies on behalf of Everest. In this suit, Plaintiff claims that Defendant is liable for, inter alia, breach of fiduciary duty and conversion for failing to remit a portion of the insurance premiums that it collected on Everest's behalf. On this motion, Plaintiff seeks the return of those premiums as relief. In its defense, Inter-Aero maintains that a profit sharing agreement between the parties entitles it to withhold from these premiums certain profit sharing commissions. Having considered the parties' arguments, for the reasons set forth herein, the Court **GRANTS in part and DENIES in part** Plaintiff's motion for partial summary judgment; Plaintiff's motion with respect to its breach of fiduciary claim is denied and the motion as to its conversion claim is granted.

1

## I. BACKGROUND

The relevant facts below are not in dispute unless otherwise noted. Everest is an international reinsurance company that offers insurance and reinsurance products covering various risks. Everest Statement of Undisputed Material Facts ("Everest's Statement") ¶ 1. Inter-Aero underwrites specialty insurance businesses, including space and aviation, on behalf of insurance carriers, including Everest. Id. According to both parties, in September 2009, Everest and Inter-Aero entered into discussions regarding underwriting space risks. As a result of these discussions, a "Program Administrative Agreement" (hereinafter "Agreement") was drafted. See Draft Agreement dated November 4, 2009; Everest Statement ¶ 3. The Agreement proposed (1) an arrangement whereby Inter-Aero would collect premiums on Everest's behalf and remit these premiums to Everest, less a commission, and (2) a profit sharing agreement which would entitle Inter-Aero to a percentage of Everest's profit from the business generated by Inter-Aero. Declaration of Inken Gerlach (hereinafter "Gerlach Decl.") Ex. A at 15. Although the parties entered into discussions regarding the Agreement, they disagree as to whether this document resulted in a binding contract.

In October 2009, Inter-Aero began to underwrite space risks on Everest's behalf. See Everest Statements ¶ 6. According to Everest, during that time, Inter-Aero wrote insurance policies on an individual basis and Everest would separately evaluate each of these policies and make a decision as to whether to provide coverage. Id. at ¶ 7. Inter-Aero disagrees, contending that it was acting as "managing general underwriter" for Everest in accordance with the terms of the Agreement. Def.'s Supplemental Statement of Undisputed Material Facts (hereinafter "Inter-Aero's Statement") ¶ 17. On or about April 7, 2010, Inter-Aero notified Everest that the Starr Aviation Agency had purchased Inter-Aero. See Id. ¶ 25; Everest Reinsurance Company's Resp.

to Supplemental Statement of Purported Material Facts (hereinafter "Everest's Resp.") ¶ 25.  In April 2010, Everest instructed Inter-Aero to cease underwriting risks on Everest's behalf.  Inter-Aero's Statement ¶ 26; Everest's Resp. ¶ 26.

In January 2011, Inter-Aero requested from Everest the profit sharing payment it believed it was owed under the profit sharing provision of the Agreement.  Inter-Aero's Statements ¶ 30.  Everest indicated that it would not pay the amount requested by Inter-Aero.  Id. at ¶ 31.  Consequently, Inter-Aero withheld a profit share payment in the amount of $724,466 from the premiums that it remitted to Everest ("Disputed Funds").  Id. at ¶¶ 30, 32.  During the pendency of this litigation, Inter-Aero holds the Disputed Funds in a trust account in California.  Inter-Aero's Statement ¶ 27; Everest's Resp. ¶ 27.

Plaintiff initiated this lawsuit seeking the repayment of the Disputed Funds.  In response, Inter-Aero asserts, inter alia, a breach of contract counterclaim, averring that Everest breached the Agreement by refusing to pay any profit share commissions.  In the instant matter, Plaintiff accuses Inter-Aero of breaching its fiduciary duty by refusing to remit the remainder of the insurance premiums, which conduct, Plaintiff claims, also constitutes conversion.

## II.  STANDARD OF REVIEW

Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  See id. at 252.  In

determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." Celotex v. Catrett, 477 U.S. 317, 323 (1986).  The non-moving party then carries the burden to "designate specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotation marks omitted).  Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading. Id. at 324; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  A mere "scintilla of evidence . . . will be insufficient." Anderson, 477 U.S. at 252.  Specifically, "while the jury may draw reasonable inferences, it may not be permitted to reach its verdict merely on the basis of speculation or conjecture . . . there must be evidence upon which logically its conclusion may be based." Community Preschool & Nursery of East Liberty, LLC v. Tri-State Realty, Inc., 430 Fed. Appx. 125, 127 (3d Cir. 2011) (quoting Fitzpatrick v. Natter, 599 Pa. 465, 485-86 (2008)).

A partial summary judgment is "interlocutory in nature and does not terminate the action as to any of the claims or parties." Gallant v. Telebrands Corp., 35 F. Supp. 2d 378, 393 (D.N.J. 1998) (citing Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7-8 (1980)).  "Accordingly, a partial summary judgment order is subject to revision or vacation at any time prior to final judgment."  Gallant, 35 F. Supp. 2d at 393.  However, "considerable import" is attached to the rendering of a partial summary judgment, despite the non-final nature of the judgment.  Id. at

4

394 (citing Confer v. Custom Eng'g Co. Employee Health Benefit Plan, 760 F.Supp 75, 77 (W.D. Pa. 1991)).

## III. DISCUSSION

### A. Choice of Law

Before the analysis of the issues, the Court notes that the choice of law question, namely whether to apply California or New Jersey law to the dispute in this case, has not been addressed. Because both parties agree that there is no conflict between California and New Jersey law on this motion, the Court will analyze the facts of the case under the laws of both states.

### B. California and New Jersey Law Establish that Inter-Aero Has a Fiduciary Duty to Remit the Premiums which it Collects on Everest's Behalf

In New Jersey, common law establishes Inter-Aero's fiduciary duty with respect to the premiums that it collects on Everest's behalf. "[O]nce a broker delivers a policy of insurance, he incurs a concomitant responsibility to collect and remit premiums to the insurer . . . (which) creates a principal-agent relationship between the insurer and the broker." Sheeran v. Siren, 168 N.J. Super 402, 408-09 (Law Div. 1979) (internal citations omitted). As its agent, Inter-Aero owes Everest a fiduciary duty with respect to the premiums that it collects. See Salamon v. Teleplus Enters., No. 05-2058, 2008 U.S. Dist. LEXIS 43112, at *41 (D.N.J. Jun. 2, 2008) (quoting Restatement (Third) of Agency § 8.01 (2006)). Furthermore, under New Jersey law, "a fiduciary cannot assert as an offset a personal claim against a beneficiary who seeks payment from the fiduciary of funds held from the beneficiary, nor may a trustee withhold trust finds from a cestui to obtain payment of a personal debt." Bohlinger v. Ward & Co., 34 N.J. Super. 583, 592 (App. Div. 1955). In other words, under New Jersey law, Inter-Aero may not withhold moneys that it claims are owed to it pursuant to a "personal claim" from the premiums that it has a fiduciary duty to remit.

> In California, Inter-Aero's fiduciary duty is established by statute as follows:
>
> All funds received by any person acting as a licensee under this chapter . . . as premium or return premium on or under any policy of insurance or undertaking of bail, are received and held by that person in his or her fiduciary capacity. Any such person who diverts or appropriates those fiduciary funds to his or her own use is guilty of theft and punishable for theft as provided by law. . . .

Cal. Ins. Code § 1733.  Furthermore, California law requires Inter-Aero to "[r]emit premiums, less commissions . . . to the insurer (Everest)."  See Cal. Ins. Code § 1734 (a).

Without doubt, under both California and New Jersey law, Inter-Aero has a fiduciary duty to remit the premiums that it collected on behalf of Everest.  However, the issue here is whether Inter-Aero breached that duty by withholding the profit sharing payment from the premiums.  On that question, Inter-Aero claims that because the Agreement allows for such withholding, it acted in accordance with its contractual obligations and fiduciary duty.  In response, Everest contends that it did not enter into the Agreement, and thus, the Agreement is not binding.  In the alternative, Everest claims that even if the terms of the Agreement were binding, they disallow Inter-Aero from withholding the Disputed Funds.  While Inter-Aero concedes that the parties did not sign a final contract, Inter-Aero maintains that the course of dealings between the parties renders the Agreement a contract implied in law or in fact.  Def.'s Br. at 2-3.  For support, Inter-Aero relies on Gerlach's Declaration.  On the other hand, while Everest disputes this assertion in its briefs, it cites no record evidence to support its position.  Consequently, the Court finds that whether the parties are bound by the terms of the Agreement is a genuine issue of material fact, not subject to resolution on this motion.  However, on this summary judgment motion, the Court must construe the facts in the light most favorable to Inter-Aero.  In that regard, for present purposes, the Court will treat the Agreement as a contract in order to evaluate Inter-Aero's defenses.  Having undertaken that review, the Court finds that the

terms of the Agreement – whether or not they are binding on the parties -- do not permit Inter-Aero to withhold the Disputed Funds.

### C. The Agreement Does Not Allow Inter-Aero to Offset its Profit Sharing Payment against the Premiums that it Must Remit

Section IV(F)(1) of the Agreement provides for the remittance of premiums collected by Inter-Aero to Everest. That section states that

> [t]he Administrator[1] shall be responsible for collecting all premiums for insurance written under the program. The Administrator shall be liable for and shall pay to the Company net written premiums due and payable under the policies issued pursuant to this Agreement and any applicable surcharges attributable to the business produced by the Administrator hereunder (collectively, for the purposes of this Agreement "net premiums"), whether the Administrator has collected such sums or not (except if the Company has relieved the Administrator of its obligation to remit any part of said premium pursuant to Section IV(F)(6) below).

Gerlach Decl. Ex. A at 4. Essentially, this provision provides that Inter-Aero is responsible for collecting any premiums that it underwrites for Everest.

This section defines "net written premiums" -- the amount that Inter-Aero must remit -- as "gross written premiums on such business produced by the Administrator, <u>less return premiums and applicable commissions set forth in Section VI of this Agreement</u>." <u>Id.</u> (emphasis added). Section IV(F)(1) further notes that net premiums "may not be reduced by any deduction other than applicable commissions and/or return premiums." <u>Id</u>. Later, part 5 of the same section sets forth the duty of Inter-Aero to hold in trust the net premiums that it must remit to Everest pursuant to the Agreement:

> All premiums, including premiums received by the Administrator, are the property of the Company and shall be held by the Administrator in a fiduciary capacity as trustee until delivered to the Company or the insured, as applicable. The Administrator shall maintain such fiduciary funds on all business at all times in a trustee bank account or depository in California (the "Account"), separate from any other account or depository, in an amount

---

[1] In the Agreement, the "Administrator" refers to Inter-Aero, and the "Company" refers to Everest.

> at least equal to the premiums and return premiums, <u>net of commissions</u>, received by it and unpaid to the persons entitled thereto, or at their direction or pursuant to written contract, for the account of such persons.

<u>Id.</u> at 5 (emphasis added). "[C]ommissions" refers to "applicable commissions set forth in Section VI of this Agreement."

In short, pursuant to Section IV(F), Inter-Aero may only offset "applicable commissions set forth in Section VI of this agreement" against the premiums that it collects. <u>Id.</u> at 4. To decide whether the Agreement provides a right to offset profit sharing commissions, an inquiry must be made as to whether such payments fall within the category of "applicable commissions set forth in Section VI." As explained below, the Court finds that they do not qualify as such.

Section VI is entitled "Compensation to the Administrator." <u>Id.</u> at 16. Paragraph one sets forth a specific type of commission calculated as a percentage of each policy underwritten by Inter-Aero. <u>Id.</u> In addition, to this type of "pro rata share" commission, Paragraph two entitles Inter-Aero to a profit sharing payment pursuant to the terms of the profit sharing plan set forth in Exhibit II of the Agreement. Paragraph three sets forth certain qualifications regarding the compensation to which Inter-Aero is entitled. <u>Id.</u> at 15-16.

Specifically, Paragraph one of Section VI provides that "the Company shall pay the Administrator a commission of 5.5% of Gross Written Premium written under this Agreement, plus acquisition costs." <u>Id</u>. at 15. In order to collect this type of commission, "[t]he Administrator may withhold its commission from the premium payments due to the Company under Section IV(F)." <u>Id.</u> The next sentence qualifies this statement, providing that "in no event shall the Administrator withhold more commission than its pro rata portion of the premium amounts actually paid to the Company." <u>Id.</u> It is clear from this statement's location, which is at the end of Paragraph one, that Inter-Aero's right to withhold commissions from the premiums is

8

limited to the type of commission set forth earlier in the same paragraph – the "pro rata share commission." And, the allowable withholding does not extend to an amount due under the profit sharing plan referenced in the next paragraph. Indeed, this conclusion is bolstered by the plain and unambiguous language of Exhibit II, which sets forth the specifics of the "profit sharing plan" introduced in Paragraph two of Section VI.

In particular, Exhibit II, under the heading "Profit Sharing Compensation," provides that "[i]n addition to the commission allowed in Section VI, the Company will pay the Administrator an annual profit commission equal to twenty percent (20%) of the net profit, if any, accruing to the Company." Id. at 29 (emphasis added). Such language makes clear that the parties intended Inter-Aero's compensation set forth in the profit sharing plan to be distinct from the "commission allowed in Section VI," which only includes the "pro rata share" commission. See supra. Furthermore, more compellingly, Section II provides that "[a]ny profit commission shown due to the Administrator will be paid by the Company within thirty (30) days following the Administrator's submission of the profit commission report to the Company." This language describes the method in which Inter-Aero receives the profit sharing payment. Indeed, the parties intended that Inter-Aero receive such payment through a transfer of funds from Everest within a set time period, not through Inter-Aero's unilateral decision to withhold funds from the premiums that it had a duty to remit.

One could argue that the fact that the profit sharing payment is referred to as a "commission" in Exhibit II qualifies it under the umbrella of "applicable commissions set forth in Section VI." However, it is plain from the language and structure of the Agreement that "applicable commissions set forth in Section VI" includes only those commissions to which Inter-Aero is entitled pursuant to Section VI, Paragraph one, and not "profit commission[s]" to

9

which Inter-Aero is entitled pursuant to Paragraph two.  Consequently, the Court finds that the pertinent terms of Agreement unambiguously provide no right for Inter-Aero to withhold the Disputed Funds.  Having made that determination, the Court decides whether under the laws of California and New Jersey, Inter-Aero converted Everest's funds and breached its fiduciary duty.

### D.   INTER-AERO IS LIABLE TO EVEREST FOR CONVERSION

Under New Jersey Law, "[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property."  Peloro v. United States, 488 F.3d 163, 173-74 (3d Cir. 2007) (alteration in original) (citations omitted).  Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages."  Plummer v. Day/Eisenberg, LLP, 184 Cal. App. 4th 38, 50 (Cal. Ct. App. 2010) (internal citations and quotation marks omitted).  In the present case, under both states' conversion law, whether Inter-Aero is liable for conversion depends upon the ownership of the Disputed Funds.  As the Court has found that the contract does not allow Inter-Aero to withhold its profit sharing payment from the premiums, the Disputed Funds that Inter-Aero has withheld is the property of Everest – no matter if Inter-Aero would ultimately be entitled to those funds at the conclusion of this litigation.  Rather, by refusing to remit the Disputed Funds to their rightful owner, Everest, at the time when those funds were due pursuant to the Agreement, Inter-Aero has as a result converted those funds. Consequently, Plaintiff's motion with respect to this count is granted and Defendant must remit the Disputed Funds to Plaintiff.

### E. BREACH OF FIDUCIARY DUTY

Identical to its conversion claim, on this motion, Plaintiff seeks remittance of the Disputed Funds under its breach of fiduciary claim.[2] Because the Court has already determined that -- whether or not the terms of the Agreement are binding on the parties -- Inter-Aero must remit the Disputed Funds to Everest under the theory of conversion, the Court need not address the breach of fiduciary claim.[3] To the extent Plaintiff seeks additional relief under its breach of fiduciary claim, that aspect of the claim is not before the Court on this motion, and thus, the Court will deny summary judgment as to this claim.

As a final note, the Court advises that while the Disputed Funds should be turned over to Everest as Everest is the rightful owner of those funds at this time, the Court does not make any findings as to whether Inter-Aero would ultimately be entitled to profit sharing payments pursuant to certain terms of the Agreement, assuming that those terms are binding on the parties -- whether through a course of dealing or otherwise. That question will be answered as this case proceeds further.

---

[2]  Indeed, in the Complaint, both counts, i.e., breach of fiduciary duty and conversion, seek, as relief, the remittance of the Disputed Funds.

[3]  Defendant claims that Plaintiff's motion should be denied because the motion does not comply with Local Civil Rule 56.1. Specifically, Defendant argues that Plaintiff violated Rule 56.1 by making arguments in its Statement of Undisputed Material Facts. While it appears Plaintiff make certain legal conclusions in its Statement, this is not a basis for denial. Instead, the Court has disregarded those conclusions.

## IV. CONCLUSION

For the reasons stated above, Everest's Motion for Partial Summary Judgment is **GRANTED in part and DENIED in Part** as follows:  Plaintiff's motion on its breach of fiduciary claim is denied and the motion on its conversion claim is granted.  Consequently, Inter-Aero shall remit the premiums in the amount of $724,466 to Everest.  However, the Court makes no findings as to whether the parties are bound by certain terms of the Agreement and whether Inter-Aero would be entitled to profit sharing payments under those terms.


Dated:  August 21, 2012                                              /s/        Freda L. Wolfson
                                                                                      Freda L. Wolfson, U.S.D.J.